IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | No. 1:23-bk-00988-HWV |
| UPTOWN PARTNERS, LP d/b/a | : | |
| RESIDENCES AT GOVERNOR'S | : | Chapter 11 |
| SQUARE, a/k/a GOVERNOR'S | : | |
| SQUARE APARTMENTS | : | |
| Debtor | : | |
| | | |
| UPTOWN PARTNERS, LP | : | Adversary No. 1:24-ap-_____-HWV |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| CITY OF HARRISBURG | : | |
| Defendant | : | |
| | : | |

**COMPLAINT FOR SANCTIONS FOR VIOLATION
OF THE AUTOMATIC STAY AND FOR A
PRELIMINARY AND PERMENANT INJUNCTION**

The Complaint of Uptown Partners, LP ("Debtor" or "Plaintiff") for Sanctions for Violation of the Automatic Stay, and for preliminary and Permanent Injunction, by and through its undersigned counsel, is as follows:

**THE PARTIES**

1. The Plaintiff or Debtor is Uptown Partners LP having a mailing address of 4030 Rhode Island Avenue, Brentwood, Maryland.

2. The Defendant is the City of Harrisburg (the "City"), having an address at Martin Luther King, Jr. City Government Center, 10 North Second Street, Suite 402, Harrisburg, Pennsylvania.

1

## JURISDICTION AND VENUE

3. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §1334.

4. This matter is a core proceeding under 28 U.S.C. §157(b)

5. The venue in this case lies in this District pursuant to 28 U.S.C. §§1408 and 1409.

6. The statutory basis for this action includes Section 105 of the United States Bankruptcy Code, 11 U.S.C. §105 and 11 U.S.C. §362.

## BACKGROUND

7. The Debtor is a limited partnership which owns and operates a low-income housing development having a location in Harrisburg, Dauphin County, Pennsylvania.

8. On May 2, 2023, Uptown Partners, LP filed its Petition under Chapter 7 of the United States Bankruptcy Code to Case No. 1:23-bk-00988 (the "Case").

9. On September 13, 2023, by Order of this Bankruptcy Court, the case was converted to a case under Chapter 11 of the Bankruptcy Code.

10. Subsequent to the conversion of the case to Chapter 11, the Debtor has been operating its business and owns its assets as a Debtor-in-Possession.

11. There are slightly in excess of 200 units currently owed by the Debtor (the "Real Property"). Of such units, approximately three (3) have been condemned by the City of Harrisburg and approximately 123 are vacant. When the properties were condemned, the Debtor took steps to board up such properties as required to the best of its ability.

12. The balance of the properties which are not vacant or condemned have tenants. The Debtor has been, to the best of its ability, attempting to maintain the Real Property.

13. The Debtor is attempting to sell the Real Property.

14. On November 1, 2023, the Debtor filed a Motion (the "Auction Sale Motion") in the Case setting forth the procedures to be followed for an auction sale of the Real Property (the "Auction Sale").

15. On November 14, 2023, the Court entered an Order approving the procedures to be followed for the Auction Sale (the "Procedures Order").

16. The Procedures Order set forth various conditions as to the sale, including the time for closing on the sale and the requirement that there be no financing conditions or other such conditions.

17. The auction sale was conducted telephonically and the parties who submitted offers for the Real Property took part in the auction. Further, on the telephone was Neil Grover, the City of Harrisburg Solicitor.

18. Mr. Grover's main question during the auction was whether the costs necessary to be paid as part of the purchase include the sums owed to the City imposed as a result of the Citations (as defined below).

19. The primary financing utilized by the Debtor to acquire the Real Property and, thereafter, perform various repairs to the Real Property, are based upon loans from the Harrisburg Redevelopment Authority of the City of Harrisburg (the "Authority"), an instrumentality affiliated with the City. The Authority made these loans to the Debtor by

3

utilizing a grant of funds from HUD. As a result of various Riders placed upon the Dauphin County Court of Common Pleas Recorder of Deeds records, HUD approval may be necessary in order for a party to purchase the Real Property through an assumption of the HUD loans.

20. The Debtor conducted an auction and had three (3) interested buyers. The first and second buyers, ANCDI and 2087 Market Street, LLC, did file documents with the United States Department of Housing and Urban Development ("HUD") for approval to assume loans as secured by the Debtor's Real Property.

21. For various reasons, ANCDI and 2087 Market Street, LLC, have not been able to provide HUD with all of the information requested.

22. Certain of the information which has been requested by HUD is a plan from a prospective buyer with respect to the rehabilitation of the Real Property. In order to do so, the Debtor believes and therefore alleges that all prospective buyers need a list of those items which the City considers crucial to be performed. This information is necessary in order to list in priority the work to be performed for rehabilitation of the Real Property.

23. To date, despite requests to the City, such information regarding the crucial items has not been forthcoming from the City.

24. Another party, CIG Group, who is believed to have experience with HUD projects, has now expressed interest in purchasing the Real Property and is submitting or has submitted documents to HUD to gain approval of its purchase.

4

25. When CIG Group attempted to discuss its acquisition of the Real Property with the City and its representatives, City representatives, including possibly Mayor Wanda Williams, indicated that CIG would never purchase the Real Property.

26. A fourth party that submitted an offer prior to the auction and was in attendance during the auction, Woda Cooper Group, submitted a proposal to purchase the Real Property which did not conform to the terms of the Court's Auction Procedures Order.

27. Despite the conditions set forth in the Procedures Order, Woda Cooper Group's offer included, among other items, a financing contingency, receipt of various tax credits and a one hundred twenty (120) day due diligence period of time, as well as an additional ninety (90) days to close with no guarantee that closing would occur. The due diligence period of time as proposed by Woda Cooper Group would by the end of the due diligence period of time, permit Woda Cooper Group to withdraw from the sale process. Woda Cooper's bids did not conform to the Sale Procedures Order entered by the Court.

28. Nonetheless, the City has indicated it prefers Woda Cooper Group as a buyer, for reasons unknown to the Debtor.

29. Both prior to the date of the Petition in the Case and subsequent to the Petition Date, the City has been issuing Citations (the "Citations") to the Debtor for various items, including, mostly failure to cut the grass, dispose of weeds and dispose of trash, and failure to shovel sidewalks (the "Alleged Violations"). The City removes trash from the Property. Much of the trash which is the subject of the Citations is from illegal dumping.

30. At a hearing held before the Court to discuss whether to dismiss the Case based upon actions filed by the Chapter 7 Trustee, Kara Gendron, the Debtor agreed it would convert its Case to Chapter 11, which subsequently occurred as set forth above.

31. At such hearing, the Debtor, through its counsel, stated that one of the issues with converting the Case was the continuing ongoing efforts by the City to issue Citations for Alleged Violations. While not necessarily on the record, the City Solicitor, Neil Grover, specifically stated to Debtor's counsel that while he may have no control over the issuance of Citations that he would do his best to see that the City ceased the issuance of such Citations.

32. The statement by Mr. Grover, as City Solicitor, that he could not control the issuance of Citations is somewhat incredulous given his position in the City and based upon events set forth below.

33. Recently, on September 23, 2024, a hearing was held in a Harrisburg District Court on approximately 500 City Citations against the Debtor and additional Citations against the Debtor's Management Company. Mr. Grover attended the hearing and represented the City.

34. The most recent District Judge hearing included Citations issued pre and post-Petition.

35. The City has continued to issue numerous Citations, request hearings before District Judge McKnight, as well as proceed in the Court of Common Pleas of Dauphin County, Pennsylvania to attempt to collect the fines imposed as the result of hearings on some of the Citations. Specifically, in addition to the most recent District Judge hearing

6

on September 23, 2024, in the Court of Common Pleas of Dauphin County ("Dauphin County Court"), two (2) hearings were held before The Honorable Richard Lewis in the Dauphin County Court with respect to the Citations. These hearings were held on January 11, 2024 and April 30, 2024.

36. At the hearings held before Judge Lewis in the Dauphin County Court, the Dauphin County Court expressed doubts it could enforce and order the payment of fines in light of the Chapter 11 Case filed by the Debtor and the imposition of the automatic stay pursuant to 11 U.S.C. §362.

37. At the hearing held on April 30, 2024, all that the City requested of Judge Lewis is that he order the Debtor to pay the fines for the Citations which have already been ruled upon by a District Judge and which were the subject of an appeal to the Dauphin County Court.

38. At the last hearing before Judge Lewis, the undersigned counsel specifically informed the Court that he believed the automatic stay prevented any Order requiring the payment of fines and costs from the Citations.

39. It should be noted that the Debtor believes, and therefore alleges, that the hearings before Judge Lewis occurred at the request of the City.

40. The District Judge hearing on September 23, 2024, was held at the request of the City.

41. Part of the problem with maintaining the occupied units as well as the grounds owned by the Debtor surrounding the various units is the lack of funds of the Debtor caused, in part, by the vacancies, and the fact that some of the units are not receiving

7

funds from Dauphin County, PA. Other causes are excessive trash, sewer and water charges.

42. As a result, the Debtor's cash flow has greatly suffered.

43. Nonetheless, the Debtor is hiring an outside company to assist with property maintenance.

## CITATIONS

44. Many of the Citations are written on multi-copy forms and are difficult to read. An example of many of the Citations received in this form is attached hereto as Exhibit "A" and made a part hereof.

45. As can be seen from Exhibit "A", it is impossible to determine the complete nature of many of the Citations.

46. The Debtor has examined those Citations which it has in its possession. Attached hereto as Exhibit "B" and made a part hereof, compiled to the best of the Debtor's ability is a list of Citations, the Alleged Violations (when it can be read) and the party named as the defendant.

47. As can be seen by a review of Exhibit "B", many of the Citations merely state "Code Adoption".

48. In addition, the parties named in such Citations are not always the Debtor. Some of the parties are Landex Management LLC a/k/a Winn Companies, the management company of the Debtor, individuals, including Peter Siegel who is not a direct owner of the Debtor, Y. Diaz, an employee of Winn Companies, and W. Rouse, who is an individual who owns part of an entity that was an owner of the general partner of the debtor.

49. By way of information, Peter Siegel is an owner of the general partner of the Debtor and an owner of the limited partner of the Debtor.

50. As can also be seen from a review of Exhibit "B", most of these items that can be read, including the most recent ones from 2024, relate to failure to cut high weeds and grass. Some of these Citations are with respect to the same parcels repeatedly, often issued within the same week.

51. It is clear from a review of those Citations that the Debtor has been able to read, that most, if not all, of the Citations are not health and safety violations.

52. Further, the Debtor, to the best of its ability, is maintaining the Real Property, cutting the weeds and grass and removing trash.

53. The Real Property is in a portion of the City of Harrisburg which is, at best, not among the best neighborhoods of the City.

54. To the extent that units owned by the Debtor have been boarded so as not to be utilized, often, these units are broken into by unknown parties. In addition, there are, on occasion, squatters in some of the units.

55. The management company of the Debtor, upon seeing boards removed from units or squatters in a unit, expeditiously contacted the City of Harrisburg police department to deal with such issues.

56. At the September 23, 2024 hearing, approximately sixty percent (60%) of the Citations were stated to be grass Citations and thirty percent (30%) were trash issues. The Debtor believes and therefore alleges that many of the Citations are repeated as to the same properties or units at the Debtor's Real Property. As set forth on Exhibit "B", some of the

Citations are for "Unit Registration". These citations do not represent health and safety issues.

57. The Citations in question are not a threat to health and safety.

58. The most recent Citations are issued without prior notice to the Debtor to effectuate remediation. Upon receiving the Citations post-Petition, the Debtor has taken steps to cut the grass and remove the trash.

59. Further, as evidenced by the City's moving to collect the fines based upon prior Citations, it is clear that the City is interested more in obtaining the funds resulting to the alleged violations, than as to the actual violations.

60. Absent a sale of the Debtor's Real Property, the Debtor will find itself eventually unable to continue to maintain the Real Property at all and may find it necessary to vacate all occupied units.

61. In addition, the Debtor has offered the Real Property to the holder of the mortgage, the Authority, by way of a Deed in Lieu of Foreclosure or a friendly foreclosure. These efforts commenced approximately four (4) years ago. To date, the Authority and the City have refused to take control of the Real Property.

**COUNT I**
**VIOLATION OF THE AUTOMATIC STAY**

62. The foregoing paragraphs 1 through 54 are incorporated herein by reference as if more fully set forth.

63. It is clear that Section 362(a)(1) of the Bankruptcy Code provides that the filing of a bankruptcy operates as a stay against, *inter alia:*

> [t]he commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor.

64. Section 362(a)(2) and (3) sets forth that any act to obtain a judgment that affects the property of an estate is also automatically stayed.

65. The City clearly knew that the Debtor had filed the Case on May 2, 2023, and that the Case was converted to Chapter 11 on September 12, 2023. The City has taken part in hearings almost from the Case's inception.

66. Despite the City being aware of the filing of the Case, and the imposition of the automatic stay, the City has continued to issue Citations, request that the Citations proceed to hearings, both in the Magisterial District Court and in the Court of Common Pleas of Dauphin County, regarding pre-Petition and new Citations.

67. At the hearings before the District Justice, the major action which occurred relates to the imposition of fines and costs. Most recently, at the September 23 hearing, the District Judge indicated she will impose monetary fines only.

68. The purpose of the Citations at this time is to cause monetary fines and costs to be placed upon the Debtor and to collect such funds, and to harass the Debtor.

69. Any attempt to collect monetary obligations constitutes a violation of Section 362 of the Bankruptcy Code.

70. The imposition of fines and costs against the Debtor by the City has had a chilling effect upon potential purchasers of the Real Property, and most recently, upon the management company, Winn Companies.

71. As a result of the Citation, Winn Companies has expressed a reluctance to continue to manage the Real Property and has filed pleadings in this case so stating.

72. Without a manager, the Debtor will not be able to operate the Real Property.

73. As evidenced by Winn Companies' reluctance to continue to manage the Real Property, Winn Companies has filed a Motion regarding its contract [Doc 144] in an attempt to be relieved from its duties under its management agreement.

74. The City's actions regarding the Citations are a violation of Section 362 of the Bankruptcy Code.

75. Willful violations of Section 362 of the Bankruptcy Code permit the Court to impose sanctions and damages upon the City which constitute both actual and punitive damages.

**WHEREFORE**, Uptown Partners LP respectfully requests that an Order be entered providing that:

    a. The Court award actual and reasonable damages to Uptown Partners LP for violations of the automatic stay and impose sanctions for the City of Harrisburg's actions set forth in Count I;

    b. The City of Harrisburg cease and desist from pursuing any additional Citations against the Real Property and collection of the fines and costs from any such Citations, unless such Citations are shown to be actual problems as to the health and safety of the residents at the Real Property as well as attempts to proceed as to existing Citations;

    c. The City of Harrisburg provide advance notice to Uptown Partners LP with advance notice as to any alleged failure to cut lawns, weeds or remove trash or snow;

    d. The Court enter an Order in the form requested by Uptown Partners LP providing for the payment of costs and expenses of Uptown Partners LP in

bringing this action, and attorneys' fees and sanctions in an amount to be determined;

   e.  Uptown Partners LP be awarded such other and further relief as is just and proper.

## COUNT II
## CHILLING BIDDERS FOR THE PURCHASE OF THE REAL PROPERTY

76. The foregoing paragraphs 1 through 68 are incorporated herein by reference as if more fully set forth.

77. As set forth above, the Debtor filed the Auction Sale Motion. The Debtor has always stated that it is the intent of the Case filing to sell the Debtor's Real Property.

78. Despite at least three (3) buyers coming forward who are financially qualified to purchase the Real Property, the City has imposed roadblocks in the attempt of each such party to purchase the Real Property.

79. The City has gone so far as to state that none of these parties will ever be able to purchase the Real Property. The City in its own judgment, not that of the Court or of the Debtor, has determined that none of these buyers are qualified.

80. The only buyer the City seems to approve of is Woda Cooper Group, a party who will not commit to actually purchasing the Real Property, but rather, has offered a proposal which is illusory at best.

81. Counsel for the Debtor reached out to counsel for Woda Cooper Group to see if there were any other terms under which Woda Cooper Group would purchase the Real Property. Counsel for Woda Cooper stated that, to his knowledge, none exists.

82. The City's continued attempts to discourage buyers is a violation of the automatic stay, causes harm to the Real Property, chills bidders for the Real Property and may constitute a violation of the 28 U.S. Code which may result in civil and criminal sanctions.

**WHEREFORE**, Uptown Partners LP respectfully requests that an Order be entered providing that:

    a.    The Court award actual and punitive damages and sanctions to Uptown Partners LP for violations set forth in Count II;

    b.    The City of Harrisburg be ordered to cease and desist from interfering in the sale of the Real Property and that the City of Harrisburg cooperate with any potential buyers for the purchase of the Real Property;

    c.    The Court enter an Order in the form requested by Uptown Partners LP providing that the City of Harrisburg shall not interfere with the sale of the Real Property and that upon immediate hearing, further sanctions will be requested of the Court; and

    d.    Uptown Partners LP be awarded such other and further relief as is just and proper.

## COUNT III
## PRELIMINARY AND PERMENANT INJUNCTION

83. The foregoing paragraphs 1 through 75 are incorporated herein by reference as if more fully set forth.

84. As set forth above, the City continues to issue Citations and proceed in state court to attempt to collect sums imposed upon the Debtor for alleged violations of Citations.

85. Based upon communications received by counsel to the Debtor, it is believed that the City will continue to issue such Citations and proceed with hearings and efforts to collect.

86. As set forth above, the Debtor will suffer great harm to itself and its estate and because of the chilling effect on potential buyers, as well as the monetary costs, thereby diminishing the amounts which will be received from the sale of the Real Property to pay creditors.

87. The harm to the Debtor and its estate greatly outweighs any potential harm which will occur to the City of Harrisburg.

88. The City is fully aware that continuing efforts to collect funds is a violation of the automatic stay. Such awareness is further evidenced by statements made by Judge Lewis of the Court of Common of Pleas of Dauphin County that he does not believe he can order payment of the funds owed under the Citations. Nonetheless, the City continues to pursue actions for the imposition of fines and costs.

89. The Debtor is likely to be successful on the merits of the Complaint.

90. Issuance of a Preliminary and Permanent Injunction will not harm the City of Harrisburg, in a manner which outweighs the harm to the Debtor and its estate. Further, a sale of the Real Property to a party who can place funds into the rehabilitation of the Real Property and continue to maintain the Real Property will actually benefit the City.

91. The issuance of a Preliminary and Permanent Injunction ordering the City to cease issuing Citations, attempt to collect on fines and costs imposed as a result of the Citations, and taking steps to discourage potential buyers for the Real Property is needed

in light of the policy contained in the United States Bankruptcy Code favoring reorganization and for the protection of the Debtor's bankruptcy estate and its creditors.

**WHEREFORE**, Uptown Partners LP respectfully requests this Honorable Court entered judgment in favor of Uptown Partners LP and against the City of Harrisburg, providing that:

      a.    A Preliminary and Permanent Injunction be entered against the City of Harrisburg, ordering that it cease and desist from imposing any additional Citations against the Debtor, the Debtor's management company or any other parties who have any connection with the Debtor's Real Property;

      b.    Ordering the City of Harrisburg to cooperate with reasonable request from prospective buyers for information regarding the Real Property;

      c.    Cease and desist from imposing impediments as to potential buyers interested in purchasing the Real Property and cease and desist from taking steps to discouraging buyers to purchase the Real Property;

      d.    Award Uptown Partners LP its costs and attorneys' fees in this matter;

      e.    Uptown Partners LP be awarded such other and further relief as is just and proper.

Respectfully submitted:

CUNNINGHAM, CHERNICOFF
& WARSHAWSKY, P.C.

By: /s/ Robert E. Chernicoff
Robert E. Chernicoff, Esquire
Attorney I.D. No. 23380
2320 North Second Street
P. O. Box 60457
Harrisburg, PA 17106-0457
(717) 238-6570

Date: October 8, 2024

16

Case 1:23-bk-00988-HWV    Doc 188    Filed 10/08/24    Entered 10/08/24 15:42:53    Desc
Main Document    Page 16 of 16